IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

THERESA LOPEZ

Plaintiff,
v.

LUDVIK ELECTRIC COMPANY and ROBERT WATKINS, Individually and in his capacity as agent for Ludvik Electric Company, Inc.

Defendants

---

**COMPLAINT WITH DEMAND FOR JURY TRIAL**

---

Plaintiff Theresa Lopez, by and through her attorney, Robin Cochran, and for her Complaint against the Defendants, Ludvik Electric Company, a/k/a Ludvik Electric Company, Inc. and Robert Watkins, individually and in his capacity as agent for Ludvik Electric Company, submits this Complaint and Demand for Jury Trial.

## I. NATURE OF THE CASE

1. Plaintiff' brings this employment discrimination and civil rights action against Ludvik Electric Company, aka Ludvik Electric Company, Inc (hereinafter Ludvik or Ludvik Electric). Plaintiff seeks equitable and remedial relief and compensatory damages to redress Defendant Ludvik's deprivation of her employment-related civil rights secured to her by the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et. seq.* (Title VII), and the Americans With Disability Act Amended Act ("ADAAA"), 42 U.S.C. §§ 12101 *et. seq.* (Title I).

2. This is a companion case related to Civil Action No 21 CV 1023 SKC captioned Theresa Lopez, Plaintiff v. Lopez Electric Company and Robert Watkins, Individually and in his

      capacity as agent for the Ludvik Electric Company, Inc, Defendants. Because a right to sue letter from EEOC was not issued for several weeks after the initial Complaint in Civil Action No, 21 CV 1023 SKC was filed, and because of the uncertainty regarding amending that Complaint to assert that the right to sue letter was received, and out of an abundance of caution, Plaintiff is filing this lawsuit within 90 days of the date that the right to sue letter was issued by the Equal Employment Opportunity Commission, which was on June 23, 2021.

3. While Plaintiff was employed by the Defendants, she was unlawfully discriminated against based on her protected class, disabled, and in retaliation for engaging in protected activity when she asked for an accommodation. When Plaintiff sought a reasonable accommodation for her disability and requested FMLA leave, Ludvik Electric and Robert Watkins retaliated by terminating her employment. Defendant employs more than 100 persons in Colorado and is subject to all laws and statutes cited herein; upon information and belief, Ludvik received federal funds or worked on projects that received such funds.

4. Robert Watkins, a high-ranking supervisor and manager, engaged in an office telephone conversation with a female salesperson while on speaker phone. Mr. Watkins knew, or should have known, that several female employees could overhear his conversation Watkins made inappropriate sexual comments to the female sales person, which created a hostile and invidiously discriminatory environment based on sex discrimination and sexual harassment. This action violated 42 U.S.C. 2000e, *et. seq.*, including without limitation § 2000e-16(b)(a)(1).

5. During her employment Plaintiff developed hip dysplasia which at times made it difficult to walk and sit for long periods of time. On about January 9th, 2020 she notified

       Ludvik's Human Resources Department Manager, Dale Hagar, of her disability, provided a note from her health care provider verifying her disability and suggesting reasonable accommodations. She also requested to use Family and Medical Leave when necessary. The Human Resources Director promised to give her the paperwork to complete her request and stated that accommodating her disability would not be a problem. One day later, on January 10, 2020, Robert Watkins, Operations Manager, met with Plaintiff and told her that he received her request for accommodation, but that he had "other plans" -- he immediately fired her.

6. Defendants' acts and omissions caused Plaintiff to suffer severe mental and emotional distress, anguish, upset and humiliation, and loss of employment, employment compensation, and employment opportunities. She seeks awards of back pay, front pay, compensatory damages, attorneys' fees, costs of this action, and/or reinstatement and other equitable or remedial relief.

## II.  JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over these Title VII, ADA, and Rehabilitation Act of 1973, claims under 28 U.S.C. § §1331, 29 U.S.C. §§ 791 and 794, 29 U.S.C. §§ 2601-2654; 29 U.S.C. § 2612(a) , 19 U.S.C. §§ 201 *et. seq*. (Federal Question Jurisdiction), 28 U.S.C. §1343 (original action), and § 1367 (Supplemental Jurisdiction).

8. Venue is proper in this court because the Defendant conducts business and has offices located in Colorado and is subject to the jurisdiction of this Court, and the activities occurred in Colorado.

9. Plaintiff has complied with all conditions precedent to the filing of claims arising out of the Americans with Disability Act and Title VII because she filed timely complaints with the

Equal Employment Opportunity Commission ("EEOC" Case No.: 32A-2020-00361) and more than 180 days have passed since the filing of the claims.

10. Right to Sue letter: on June 23, 2021, the EEOC mailed to Plaintiff's home address a right to sue notice dated June 23, 2021, but received by Plaintiff some days thereafter. This lawsuit is filed within 90 days of the mailing of the right to sue letter by EEOC.

11. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)(c) and 42 U.S.C. § 2000e-16b(a)(1), and § 2000e-5(f)(3), because the employment practices or omissions alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado

### III.  PARTIES

12. Plaintiff Theresa Lopez was at all times a resident of the state of Colorado, (hereinafter "Ms. Lopez" or "Plaintiff"). Ms. Lopez suffers from a disability as defined by the ADA, and any amendments thereof, the Rehabilitation Act of 1973, and Colorado law

13. Ludvik Electric is a Colorado corporation authorized to do business in the State of Colorado. with its principal place of business located at 3900 Teller Street, Lakewood, Colorado. Ludvik Electric employs more than 100 employees.

14. At all relevant times, Plaintiff was an employee of Defendant Ludvik Electric Company, within the meaning of 42 U.S.C.§ 2000e-5, and §2000-16b(a)(1), the Americans with Disability Act, 42 U.S.C. § 12111(5)(A), and the Rehabilitation Act §§ 501 and 504.

### IV.  GENERAL ALLEGATIONS

15. Plaintiff Theresa Lopez is a citizen of the United States and the State of Colorado.

16. Defendant Ludvik Electric, incorporated in Colorado, is an electrical contractor providing electrical work for commercial and industrial large-scale facilities. It has completed over 2

billion dollars of electrical installations nationally and abroad. Ludvik employs between five hundred to 1000 employees. Its employees work in the company's office in Lakewood, Colorado and on construction sites throughout Colorado and other states.

17. Ludvik Electric was Ms. Lopez's employer and has been engaged in an industry affecting commerce, within the meaning of the Americans with Disability Act and Amended Act, and Title VII of the Civil Rights Act prohibiting discrimination and harassment based on sex.

18. Plaintiff Lopez began employment with Ludvik Electric in July 2012 as a Project Coordinator. As a result of her expertise and work ethic Plaintiff was promoted to a project manager of small to large scale projects for Ludvik. Plaintiff worked at different locations in the metro Denver area and in Castle Rock, CO.

19. Throughout her tenure with Ludvik, Plaintiff had very good to excellent performance reviews, received a promotion to project manager and had never been disciplined. She was a successful, dedicated and loyal employee.

20. Throughout her employment Plaintiff was required to work from 7 am to 5 pm each day, or 45 hours a week. Plaintiff, however, was paid based on an hourly rate of 40 hours per week. Plaintiff could not alter her work schedule, and her position required that her decisions had to be approved by her supervisor.

21. Plaintiff's immediate supervisor was Bill Miller, Construction Manager. Ms. Lopez was a successful project manager who earned the trust and respect of her supervisor and colleagues.

22. Dale Haggar was hired as the Human Resources Manager on about November 18, 2019.

23. Robert Watkins was Operations Manager and did not directly supervise Plaintiff.

24. In the fall 2019, Defendant Watkins was on a telephone call with a female sales person. He made offensive sexual comments to the woman. Plaintiff and other women clearly heard the conversation. Watkins also made derogatory comments about the physical appearance of women he worked with. He did not make similar comments about men.

25. Plaintiff suffers from hip dysplasia which causes hip pain. Walking, sitting and driving for long periods of time can be painful, and limit Plaintiffs abilities to walk, sit , and drive. Despite her condition, Plaintiff was successful in performing her job. Plaintiff notified her employer that she suffered from this condition.

26. In about October 2019, Plaintiff advised her supervisor, Bill Miller, that her hip pain had worsened but that she was able to continue to work. She and Mr. Miller discussed the possibility of working at other locations closer to her home to limit her driving time.

27. At about the same time, the job she had been working on in Denver, Colorado was ending (the "Rose Creek" job). During this project and other earlier projects, Plaintiff worked at the same location as her husband who held a different job with Ludvik. She did not supervise him and there had never been problems with or complaints about the two working in the same office or location.

28. Miller told Plaintiff and others that Plaintiff could work for Miller at the Plum Creek location in Castle Rock, or at her home; she did not have to be at the location in Lakewood to perform her job. Plaintiff usually worked on a laptop analyzing information provided by others and she merely had to log onto the company's site.

29. Throughout her tenure as project manager with Ludvik, Lopez frequently worked at locations other than the Lakewood home office, including without limitation, Denver and Castle Rock, Colorado. No one had complained about her work location, criticized the quality of

her work or her work ethic. She successfully performed her job.

30. Subsequent to the Rose Creek job, Plaintiff began working in an office on the "Plum Creek" job in Castle Rock, Co. where her husband also worked. At all times she performed her duties well. Mr. Watkins directed that Plaintiff be removed from Plum Creek location and work in Lakewood instead..

31. Thereafter, Plaintiff returned to the Lakewood office to work, which aggravated the pain from hip dysplasia.

32. Other project managers worked off-site or at home yet Watkins demanded that Plaintiff work at the Lakewood office. Plaintiff complied.

33. Throughout the fall of 2019, Miller told Robert Watkins that he had a lot of work to do and that he needed assistance. When Ms. Lopez's duties at the Castle Rock location ended, Miller asked Ms. Lopez to handle other projects. Throughout this time, Miller had expressed to Watkins that Lopez was a good candidate for taking over the projects and it was logical for her to carry on with them.

34. In about November 2019, Watkins asked Lopez if she wanted to go into an "estimating" position. Lopez advised Watkins that she was not qualified for an estimator position. Watkins was aware that there was additional work for Lopez available as project manager and in fact, there were project manager positions available.

35. As Plaintiff's job duties at Plum Creek in Castle Rock came to an end, Plaintiff met with her immediate supervisor, Bill Miller, about future projects. Mr. Miller was inundated with work, had plenty of work to assign to Plaintiff, and he needed her help. She eagerly agreed to work on the projects.

36. In November, December, 2019 and into January 2020, Lopez continued to successfully

handle projects for her immediate supervisor, Bill Miller, even though the pain from hip dysplasia had worsened.

37. On January 8, 2020, Plaintiff met with her health care provider regarding treatment for her hip dysplasia. Her provider wrote a letter stating that Plaintiff suffered from hip dysplasia, and that sitting and driving for long periods of time resulted in significant pain. The health care provider recommended that Plaintiff work from home, but also stated that working at other company locations would suffice if Plaintiff's driving time could be reduced.

38. On January 9, 2020 Plaintiff met with Dale Hagar, the Human Resources Manager, to discuss an accommodation for her disability. Plaintiff provided Hagar with the letter from her medical provider describing her disability and request for accommodations, which included working at home or working at a Ludvik site closer to home.

39. Mr. Hagar acknowledged that Ludvik had an office at the Plum Creek job that was much closer to Plaintiff's home and would satisfy her accommodation request.

40. Hagar admitted that the accommodations did not seem to be a problem. He told Plaintiff that working from home was an "accommodation they could consider and that others had done this."

41. During the meeting on January 9, 2020, Plaintiff and Mr. Hagar also discussed that Plaintiff might need to take some FMLA leave for treatment for her hip dysplasia. Mr. Hagar gave Plaintiff forms to complete for FMLA leave. He told Plaintiff that he would submit her claim and start the FMLA paperwork.

42. On December 9, 2020 Mr. Hagar met with Rob Watkins, Operations Manager, about Plaintiff's accommodation and FMLA requests. Watkins told Hagar and others that he was not going to authorize accommodations or family medical leave, but instead he

was going to fire Plaintiff.

43. Watkins had not previously told either Hagar or Bob Miller, Plaintiff's supervisor, that he was going to fire Plaintiff.

44. Ludvik did not engage in any interactive process with Plaintiff to determine whether an accommodation was necessary or what accommodations were reasonable.

45. On January 10, 2020 Watkins, Hagar, and Devyn Galbadon, a human resources specialist, met with Plaintiff who thought she was meeting with them to discuss accommodations for her disability. Watkins started off by saying "I got your request {for an accommodation} but I have other plans; I am laying you off today." Plaintiff was shocked.

46. Plaintiff was fired immediately. Less than a month later, however, Ludvik posted an opening for a Project Manager position, which was Plaintiff's prior position and/or a position she could have performed.

47. Defendant's termination of Plaintiff was in direct violation of federal and state laws. Plaintiff was fired because she was disabled and had requested a very reasonable accommodation, and/or because she requested FMLA leave, amount other protected reasons.

48. Plaintiff was retaliated against based on her disability and/or because she had requested a meeting to discuss accommodations. Ludvik, through Watkins, and Hagar, the HR Manager, refused to discuss accommodations and did not engage in any interactive process and instead, fired Plaintiff.

49. Watkins made the decision to fire Plaintiff when he learned that Plaintiff sought an accommodation and FMLA leave.

50. Upon information and belief, a Human Resources specialist advised Watkins against terminating Plaintiff since the decision was made because Plaintiff requested an

accommodation and FMLA leave, but Watkins ignored the advice.

51. After Plaintiff was terminated her employer prepared a "Payroll Status Change" form that stated that Plaintiff's separation was based on a "Permanent layoff." This was not true since a vacancy for her position of Project Manager was advertised a few of weeks later.

52. Initially the Payroll Status Change form also reflected that Plaintiff was "eligible for rehire." Sometime later, Defendant's Human Resources Manager, Dale Hagar, changed the form to read that Plaintiff was "Not eligible for Rehire." He had no explanation for the change.

53. Ludvik's practice when employees were "laid off" for lack of work was to note that the employee was eligible for rehire, particularly as in this case, where Plaintiff had been an excellent employee.

54. Inexplicably, Hagar, the Human Resource Manager, changed Plaintiff's eligibility status to "not eligible for rehire" for no apparent or logical reason except that she had requested an accommodation.

55. Upon information and belief, the change in status was in retaliation for Plaintiff's disclosure that she had a disability and because Plaintiff asked for an accommodation.

56. Plaintiff was fired because she had a disability and requested an accommodation.

57. Plaintiff was retaliated against for seeking a reasonable accommodation for her disability andother protected reasons.

58. These actions were willful and wanton.

59. Plaintiff timely filed a claim of discrimination with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission complying with all requirements for filing a charge. Her charge was based on disability, retaliation and sex harassment.

60. The Colorado Civil Rights Commission investigated Plaintiff's claims and found that Ludvik

had discriminated against Plaintiff and retaliated against her because she was disabled and had requested a reasonable accommodation for her disability.

## FIRST CLAIM FOR RELIEF
### Violation of the Americans with Disability Act ("ADA")

61. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of the Complaint.

62. Plaintiff was subjected to disparate treatment and was terminated based on her disability, hip dysplasia. Plaintiff is a person with a disability as defined by the ADA. Ludvik knew or should have known of the disability.

63. Plaintiff advised Ludvik of her medical condition several times in 2019.

64. Plaintiff satisfactorily performed her job duties at all times. She could perform the essential functions of her job with or without an accommodation and was well-qualified for the position.

65. On January 9, 2020 Plaintiff met with Defendant's Human Resource Manager to provide an update of her disability, hip dysplasia, and to request an accommodation. She gave a health care provider's note to Mr. Hagar, describing her condition and suggesting reasonable accommodations.

66. The Human Resources Manager indicated that the accommodations did not seem to be a problem.

67. Thereafter, Mr. Hagar discussed Ms. Lopez's request for accommodation with Robert Watkins, Operations Manager, and Watkins immediately decided to fire Ms. Lopez.

68. No one at Ludvik engaged in an interactive meeting with Ms. Lopez to discuss her disability and her request for accommodations.

69. On January 10, 2020, Watkins and Hagar met with Plaintiff and fired her.

70. The termination was the direct and proximate effect of Defendant's discrimination against Plaintiff based on her disability, and in retaliation for requesting an accommodation.

71. Upon informaton and belief, Ludvik receives federal funds for some of the projects and/or the projects are funded with federal funds that are passed onto Ludvik.

72. Defendants' conduct as described above constitutes discrimination on the basis of disability in violation of federal and state statutes.

73. As outlined above, Defendant purposely and willfully discriminated against Ms. Lopez based on her disability in violation of the ADA, the Rehabilitation Act of 1973.

74. Lopez is entitled to recover damages caused by Defendant's discrimination including loss of wages, loss of benefits, loss of future wages and benefits, loss of career advancement, loss of out-of- pocket expenses, pain and suffering damages, punitive damages as allowed by law, and an award of reasonable attorney's fees and costs, and other damages as allowed by law.

## SECOND CLAIM FOR RELIEF
### Retaliation in violation of the Americans with Disability Act and Amended Act,

75. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of the Complaint.

76. Defendant retaliated against plaintiff after she disclosed her disability and request for accommodation.

77. Defendant refused to engage in any interactive discussion regarding plaintiff's request for a reasonable accommodation of her disability. Defendant's refusal to do so was designed to retaliate against Plaintiff because she had a disability and/or because she requested a reasonable accommodation.

78. Plaintiff's status was changed from eligible for rehire to not eligible for rehire for no apparent

or logical reason. It was based on retaliation for requesting an accommodation.

79. Defendant's refusal to engage in an interactive discussion of plaintiff's request for accommodation, its termination of her employment, and/ or the change of Plaintiff's status to ineligible for rehire would dissuade a reasonable person from engaging in protected activity or asking for a disability accommodation.

80. There is a causal connection between the protected activity and the adverse treatment.

81. Defendant retaliated against Plaintiff for requesting an accommodation for her disability. Such action was willful, wanton, and deliberate.

82. As outlined above, Defendant purposely and willfully discriminated and retaliated against Ms. Lopez based on her disability in violation of the ADA.

83. Ms. Lopez is entitled to recover damages caused by Defendant's discrimination including reinstatement, and/or loss of wages, loss of benefits, loss of future wages and benefits, loss of career advancement, loss of out-of-pocket expenses, pain and suffering damages, punitive damages as allowed by law, and an award of reasonable attorney's fees and costs, and other damages as allowed by law.

**THIRD CLAIM FOR RELIEF**
**Violation of Title VII**
**(sexual harassment and hostile environment)**

84. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of the Complaint.

85. As described above in the Amended Complaint, Plaintiff was subjected to sexual harassment and discrimination based on her sex, female.

86. The Operations Manager, Robert Watkins, made repeated offensive and sexually oriented comments to a female sales woman while on a telephone conversation which was on speaker

phone.

87. Plaintiff and other women heard Watkins' offensive and embarrassing comments to the sales woman. Watkins made the comments knowing that female employees over whom he had supervisory or other authority could hear the comments.

88. Watkins made other derogatory comments to women in the office about their appearance. He did not make similar comments to men who worked with him. These comments included without limitation, remarks about women's appearance, or whether they appeared to be "masculine' in appearance. He also denigrated women who worked directly for him by ridiculing their work habits and work product. Watkins did not make similar public comments about men.

89. The harassment perpetuated by the remarks Operations Manager was pervasive and/or severe, was sexually offensive and was based on gender. Watkins only made such comments about women.

90. The harassment was such that a reasonable person would have perceived it to interfere with the work environment and constituted a hostile work environment.

91. The sexual harassment and gender discrimination were unwelcome by Plaintiff and other women.

92. Because the harassment was perpetrated by a supervisor as defined by law, Defendant is liable for the Operation Manager's conduct.

93. The willful and intentional actions of Defendant's management employee caused Plaintiff to suffer emotional distress, anguish, harm, and pain and suffering, and Defendant is liable for punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgement in her favor and for relief as follows:

a. Back pay to be determined at trial;

b. Front pay and future pay;

c. Pain and suffering, emotional distress, compensatory and consequential damages as allowed;

d. Liquidated damages as allowed by law;

e. Punitive damages as allowed by law:

f. Injunctive or declaratory relief;

g. Prejudgment and post judgment interest as provided by law;

h. An award of attorney's fees, costs and expenses of this action as provided by law;

i. Such other or further relief as the Court deems necessary or appropriate, including Plaintiff's reinstatement with a "no retaliation" order in effect.

## REQUEST FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

This 21th Day of September, 2021

Respectfully submitted,

/s/ Robin Cochran
Robin Cochran, Attorney at Law #12665
Law Office of Richard K. Blundell
3535 West 12th Street, Suite D
Greeley, CO 80634
Tel: 970-978-2829
Tel: 970-356-8900
Email: Robincochranlaw@aol.com
COUNSEL FOR PLAINTIFF